UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL CHAPARRO,

    Petitioner,

v.                                            Case No. 8:25-cv-2947-WFJ-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

Michael Chaparro, a Florida prisoner, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 7). Mr. Chaparro filed a reply. (Doc. 8). After careful review, the petition is **DENIED**.

**I.    Background**

Mr. Chaparro seeks habeas relief from his convictions in three separate cases in Florida's Sixth Judicial Circuit Court. (Doc. 1 at 1-3). In case number 20-CF-2201, Mr. Chaparro was charged with four counts of sexual battery on a child by a person in familial or custodial authority and two counts of lewd or lascivious molestation of a child. (Doc. 7-2, Ex. 4). In case number 20-CF-4049, Mr. Chaparro was charged with one count of lewd or lascivious molestation of a child. (*Id.*, Ex. 5). And in case number 21-CF-3669, Mr. Chaparro was charged with one count of perjury for a false statement he made during a

1

bond hearing. (*Id.*, Ex. 6). Because of the sexual battery charges, Mr. Chaparro faced a statutory maximum of life imprisonment. Fla. Stat. § 794.011(8)(b).

Mr. Chaparro ultimately agreed to plead guilty in all three cases in exchange for a total sentence of ten years' imprisonment. (Doc. 1-2 at 71-74). This represented a significant downward departure from the lowest permissible sentence of 489.6 months' imprisonment. (*Id.* at 29). Shortly before the plea colloquy, defense counsel stated on the record that he had "moved mountains to get the ten." (*Id.* at 10). Counsel explained that Mr. Chaparro would receive "ten years" in case number 20-CF-2201, a "concurrent ten years" in case number 20-CF-4049, and a "concurrent five years" in case number 21-CF-3669. (*Id.* at 19-20). During the plea colloquy, the court said, "[T]he deal is what your lawyer put on the table, that you're going to be convicted as charged, that it's going to be ten years in prison." (*Id.* at 33). The court asked, "Is this what you want to do to resolve your case today?" (*Id.* at 34). Mr. Chaparro said, "Yes, sir."[1] (*Id.*)

After accepting Mr. Chaparro's plea, the court pronounced sentence. (*Id.* at 42). For case number 20-CF-2201, the court imposed a sentence of "ten years in the Florida Department of Corrections." (*Id.*) For case number 20-CF-4049, the court sentenced Mr. Chaparro to "ten years [in the] Florida Department of Corrections," "to be run concurrent and coterminous with 20-CF-2201." (*Id.* at 44). Lastly, for case number 21-CF-3669, the court "sentence[d] [Mr. Chaparro] to a concurrent and coterminous—concurrent five years" in the Florida Department of Corrections. (*Id.* at 45).

---

[1] The written plea agreement stated that Mr. Chaparro would receive a sentence of "10 yrs DOC," "all concurrent." (Doc. 1-2 at 72).

This oral pronouncement left unclear whether the five-year sentence for case number 21-CF-3669 would run concurrently or coterminously with the ten-year sentences for the other cases. If the sentences were concurrent, Mr. Chaparro would serve ten years in prison. *See State v. Rabedeau*, 2 So. 3d 191, 193 (Fla. 2009) ("[B]y imposing sentences to be served concurrently, a trial court is permitting a defendant to serve multiple sentences at the same time."). But if the sentences were coterminous, they would "terminate simultaneously," and Mr. Chaparro would serve only five years in prison. *Whitfield v. State*, 95 So. 3d 964, 965 n.3 (Fla. 5th DCA 2012); *see also* 16 Fla. Prac., Sentencing § 1:82 (2025-2026 ed.) ("When a sentencing court orders that one sentence is to run coterminous with another sentence, the net effect is that the two sentences will end on the soonest ending date of the two.").[2]

One week after sentencing, the court entered judgments in all three cases. (Doc. 1-2 at 50-69). The judgments stated that the three sentences would run coterminously with each other. (*Id.* at 54, 61, 68). Mr. Chaparro did not appeal his convictions. (Doc. 7-2, Exs. 1-3).

Over a year after sentencing, the Florida Department of Corrections sent a letter to the trial court "seeking clarification [as] to whether [Mr. Chaparro's] sentence [was] ten years or not." (Doc. 1-11). Two months later, the State filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Doc. 1-2 at 1). It asked the court to clarify "an ambiguity" in the sentences—namely, "whether a coterminous [five-

---

[2] Florida law permits a trial court to "exercise[] its discretion to mitigate a defendant's sentence" by imposing "a coterminous sentence." *Moore v. Pearson*, 789 So. 2d 316, 319 (Fla. 2001).

3

year] sentence was orally pronounced" for case number 21-CF-3669. (*Id.* at 2). In the State's view, "the written sentences [could not] comport with the oral pronouncement because the oral pronouncement [was] ambiguous." (*Id.*) "Without clarification," the State noted, Mr. Chaparro would "be released from the Department of Corrections on all three cases after completing a five-year sentence." (*Id.*)

The court granted the Rule 3.800(a) motion, finding that its "oral pronouncement of . . . sentence [was], evidently, ambiguous," and that it was therefore "required to review the record and clarify [Mr. Chaparro's] sentence." (Doc. 1-7 at 7-8). The ambiguity arose from its oral pronouncement of "a concurrent and coterminous—concurrent five years" for case number 21-CF-3669. (Doc. 1-2 at 45). The court clarified that it "specifically intended to follow the plea agreement," which "required [Mr. Chaparro] to be incarcerated for ten years." (Doc. 1-7 at 8 (emphasis omitted)). According to the court, it "initially misspoke in stating 'coterminous' and then attempted to correct itself by stating 'concurrent' for a second time." (*Id.* (emphasis omitted)). The court explained that "[t]here [was] neither indication nor justification for finding that [it] intended an *additional* five-year departure." (*Id.*) Instead, the court sought to "ratif[y] the parties' agreement, specifically confirming with [Mr. Chaparro] that he would be incarcerated for ten years." (*Id.* (emphasis omitted)).

Thus, the court "clarifie[d] the ambiguity in [its] oral pronouncement, reflecting that [Mr. Chaparro's five-year] sentence in 21-CF-3669 [was] only to run *concurrent* to his other sentences, not *coterminous*." (*Id.* at 9). As a result, Mr. Chaparro would serve a total of ten years in prison. (*Id.* at 9-10). The court rejected Mr. Chaparro's "argument[] that the granting of the State's motion violate[d] the principle of double jeopardy." (*Id.* at 9). The

4

court reasoned that "double jeopardy [was] not implicated" because "[t]he oral pronouncement of [Mr. Chaparro's] sentences [was] ambiguous," and the written judgments could not "comport with the ambiguous oral pronouncement." (*Id.*) Moreover, given "the totality of the record, [the court's] colloquy with [Mr. Chaparro] at the time [it] accepted his plea, and the recitation and acknowledgement of the agreed-upon departure sentence," Mr. Chaparro could not have had "a legitimate expectation that his sentences in 20-CF-2201 and 20-CF-4049 were anything but ten years." (*Id.* at 10).

Mr. Chaparro appealed the correction of his sentences, and the Second District Court of Appeal affirmed in an unexplained decision. (Doc. 7-2, Ex. 10). This federal habeas petition followed. (Doc. 1).

**II.   Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The Second District Court of Appeal affirmed the correction of Mr. Chaparro's sentences in an unelaborated, *per curiam* decision. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant

rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## III.   Discussion

Mr. Chaparro raises a single claim for relief: that the trial court violated his right against double jeopardy by clarifying that his five-year sentence in case number 21-CF-3669 would run concurrently (rather than coterminously) with the ten-year sentences in his other cases. (Doc. 1 at 20-24). According to Mr. Chaparro, he "had a legitimate expectation of finality" in the sentences reflected in the written judgments, which amounted to a total term of five years in prison. (*Id.* at 24). As noted above, the court subsequently clarified that Mr. Chaparro's five-year sentence in case number 21-CF-3669 would "run *concurrent* to his other sentences, not *coterminous*." (Doc. 1-7 at 9). As a result, Mr. Chaparro would serve a total of ten years in prison. (*Id.* at 9-10). This ruling allegedly "violated double jeopardy" because it "increas[ed] his sentence by five years." (Doc. 1 at 24).

After careful review, the Court concludes that Mr. Chaparro is not entitled to relief.[3] Because the trial court rejected Mr. Chaparro's double jeopardy argument "on the merits," AEDPA's "highly deferential standards" apply. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022). The question under AEDPA is not whether the decision

---

[3] Respondent contends that the petition is unexhausted because Mr. Chaparro failed to alert the state courts to the federal nature of his claim. (Doc. 7 at 5-7). This argument lacks merit. Before the trial court, Mr. Chaparro argued that granting the State's Rule 3.800(a) motion would "violate double jeopardy principles." (Doc. 1-3 at 4). On appeal, Mr. Chaparro contended that the trial court "violate[d] double jeopardy" by "increasing a five-year sentence to ten years." (Doc. 1-8 at 16). Before the trial court and on appeal, Mr. Chaparro cited *Nelson v. State*, 724 So. 2d 1202, 1204 (Fla. 2d DCA 1998), which applied "the Double Jeopardy Clauses of the U.S. and Florida Constitutions." (Doc. 1-3 at 3; Doc. 1-8 at 15). Thus, Mr. Chaparro made "the state court[s] aware that [his claim raised] federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007).

was "incorrect" but whether the decision "was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's decision is reasonable "so long as fairminded jurists could disagree on the correctness of the . . . decision." *Richter*, 562 U.S. at 101. Thus, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Mr. Chaparro cannot show that the rejection of his double jeopardy argument "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980). But the Clause "does not provide [a] defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137. Instead, the Clause protects a defendant's "legitimate expectations of finality" in his sentence. *United States v. Young*, 953 F.2d 1288, 1291 n.3 (11th Cir. 1992). "If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the Double Jeopardy Clause." *United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987). But if "there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence." *Id.* For example, "a sentence may be illegal by virtue of its ambiguity," and

8

"correction of such a sentence does not implicate double jeopardy." *United States v. Alverson*, 666 F.2d 341, 348 (9th Cir. 1982).

A fairminded jurist could conclude that the trial court did not violate double jeopardy by clarifying Mr. Chaparro's sentences. As explained above, the oral pronouncement of sentence was ambiguous. The court sentenced Mr. Chaparro to ten years' imprisonment for case numbers 20-CF-2201 and 20-CF-4049, ordering that the ten-year sentence for case number 20-CF-4049 would "run concurrent and coterminous" with the ten-year sentence for case number 20-CF-2201. (Doc. 1-2 at 42, 44). For case number 21-CF-3669, however, the court "sentence[d] [Mr. Chaparro] to a concurrent and coterminous—concurrent five years" in the Florida Department of Corrections. (*Id.* at 45). This left unclear whether the five-year sentence for case number 21-CF-3669 would run concurrently or coterminously with the ten-year sentences for the other cases. If the sentences were concurrent, Mr. Chaparro would serve ten years in prison. *See Rabedeau*, 2 So. 3d at 193. But if the sentences were coterminous, they would "terminate simultaneously," and Mr. Chaparro would serve only five years in prison. *Whitfield*, 95 So. 3d at 965 n.3.

To be sure, the written judgments stated that the three sentences would run coterminously with each other. (Doc. 1-2 at 54, 61, 68). Under Florida law, however, "a court's oral pronouncement of sentence controls over the written document." *Ashley v. State*, 850 So. 2d 1265, 1268 (Fla. 2003). Thus, because "there [was] an ambiguity in the oral pronouncement, the proper remedy [was] for the trial court to clarify the sentence imposed." *Chapman v. State*, 14 So. 3d 273, 274 (Fla. 5th DCA 2009); *see also Tory v.*

9

*State*, 686 So. 2d 689, 691 (Fla. 4th DCA 1996) ("Where the record demonstrates that during the oral pronouncement of sentence, the trial judge made inconsistent statements, the matter must be remanded to the trial court to clarify the sentence imposed and to enter such corrected sentencing orders as may be appropriate."). The trial court followed this procedure, clarifying that Mr. Chaparro's five-year sentence in case number 21-CF-3669 would "run *concurrent* to his other [ten-year] sentences, not *coterminous*." (Doc. 1-7 at 9).

On this record, a fairminded jurist could agree that the original sentences were "so ambiguous that [they] fail[ed] to reveal [their] meaning with fair certainty." *Alverson*, 666 F.2d at 348. Mr. Chaparro could have no legitimate "expectation of finality" in this "ambiguous" punishment. *United States v. Contreras-Subias*, 13 F.3d 1341, 1346 (9th Cir. 1994); *see also Alverson*, 666 F.2d at 348 ("[C]orrection of an illegally ambiguous sentence does not violate double jeopardy because the initial ambiguous sentence is of no effect."). Thus, the trial court reasonably concluded that "double jeopardy [was] not implicated" because "[t]he oral pronouncement of [Mr. Chaparro's] sentences [was] ambiguous," and the written judgments could not "comport with the ambiguous oral pronouncement." (Doc. 1-7 at 9-10).

Moreover, the "circumstance[s]" of the sentencing "undermine[] the legitimacy" of any expectation Mr. Chaparro may have had that he would serve only five years in prison. *Fogel*, 829 F.2d at 87. Mr. Chaparro agreed to plead guilty in all three cases in exchange for a total sentence of ten years' imprisonment—a significant downward departure from the lowest permissible sentence of 489.6 months' imprisonment. (Doc. 1-2 at 29, 71-74). This understanding was reflected in the written plea agreement and in defense counsel's

10

recitation of the terms of the deal. (*Id.* at 19-20, 71-74). The court itself confirmed with Mr. Chaparro that "the deal is what your lawyer put on the table, that you're going to be convicted as charged, that it's going to be ten years in prison." (*Id.* at 33). As the court later explained, there was no "indication [] or justification for finding that [it] intended an *additional* five-year departure." (Doc. 1-7 at 8). Indeed, neither side requested such leniency, and the court never hinted that it would consider departing from the bargained-for sentence. A fairminded jurist could conclude that Mr. Chaparro's "expectation of finality could not have crystallized with regard to a sentence that was . . . inconsistent with a plea agreement which he himself signed." *Contreras-Subias*, 13 F.3d at 1346.

Because "some fairminded jurists could agree" with the rejection of Mr. Chaparro's double jeopardy argument, "federal habeas relief must be denied." *Hill*, 662 F.3d at 1346.[4]

## IV. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Chaparro's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Chaparro and to **CLOSE** this case.

3. Mr. Chaparro is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial

---

[4] Respondent argues that the petition is untimely, but the Court need not reach that issue because "the petition fails on the merits." *McCormack v. Sec'y, Fla. Dep't of Corr.*, No. 22-14071, 2024 WL 3668519, at *1 (11th Cir. Aug. 6, 2024) ("[Petitioner] argues that his petition is both timely and meritorious. We need not decide whether [the] petition was timely because, even if it was, the petition fails on the merits."); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006) (noting that AEDPA's statute of limitations "is not jurisdictional").

of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Chaparro has not made the requisite showing. Because Mr. Chaparro is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on December 4, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE